OPINION
{¶ 1} This is an appeal of the judgment of the Portage County Court of Common Pleas, Juvenile Division, terminating the parental rights of appellant, Amie Slocum, and granting permanent custody of Dakota Slocum ("Dakota") to appellee, Portage County Department of Job and Family Services ("PCDJFS").
 {¶ 2} The following procedural history is relevant to this appeal. Dakota was born on August 23, 1994. Dakota's biological father, Dwight Jeter, appeared before the trial court on August 23, 2002, and voluntarily surrendered all of his parental rights in regard to his son. Over the last six years, Dakota has been in and out of foster care and has been the subject of four separate case filings. Dakota's repeated involvement with foster care has always been the result of appellant having mental health problems, including bi-polar affective disorder.
 {¶ 3} On June 24, 2002, PCDJFS filed a complaint alleging that Dakota was a dependant child pursuant to R.C. 2151.04(B), and asking the court to grant them permanent custody of the child. At the time the complaint was filed, Dakota was already in the temporary custody of PCDJFS and residing in a foster home.
 {¶ 4} A hearing was conducted before a magistrate on June 25, 2002. The magistrate held that no removal was necessary as the child was already in the temporary custody of PCDJFS. Subsequently, an adjudicatory hearing was conducted on August 23, 2002. The trial court found, by clear and convincing evidence, that Dakota was a dependent child. A revised case plan was filed on August 23, 2002.
 {¶ 5} The matter proceeded to a dispositional hearing on September 20, 2002, and, on September 30, 2002, the trial court granted permanent custody of Dakota to PCDJFS. In that judgment entry, the trial court specifically found, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency, and that Dakota is not abandoned or orphaned and cannot be placed with one of his parents within a reasonable time and should not be placed with either parent. As a result, appellant was divested of all of her parental rights.
 {¶ 6} In making this determination, the trial court explicitly stated that it considered the testimony of Dan Seacrist, a Licensed Psychologist with Coleman Professional Services; Dr. Meryl Orlando, a Clinical Psychologist with Summit Psychological Diagnostic Center; Hope Nyitray, a Family Intervention Worker with PCDJFS; and Jan Jacobs, a Licensed Social Worker with the placement unit of PCDJFS. The court also considered all the exhibits presented and the recommendations of the Guardian Ad litem.
 {¶ 7} Appellant timely filed a notice of appeal and has now set forth the following assignments of error:
 {¶ 8} "1. The trial court erred in finding that it is in the minor child's best interest that he be placed in the permanent custody of PCDJFS as the prosecutor failed to meet its burden of proof requiring clear and convincing evidence.
 {¶ 9} "2. The trial court erred in granting PCDJFS's motion for permanent custody thereby terminating the parental rights of appellant Slocum as the trial court's findings are against the manifest weight of the evidence which could only lead to one conclusion, that being contrary to the judgment of the trial court.
 {¶ 10} "3. The trial court erred in granting the PCDJFS's motion for permanent custody where the trial court failed to consider and the prosecutors failed to show, by clear and convincing evidence, whether the child could not be placed with either parent within a reasonable time or should not be placed with either parent."
 {¶ 11} While appellant has set forth three separate assignments of error, in essence, there is a single issue for this court to consider which encompasses all three assigned errors; namely, whether the trial court properly granted permanent custody of Dakota to PCDJFS. Therefore, appellant's assignments will be addressed in a consolidated manner.
 {¶ 12} R.C. 2151.41.4(B) permits the juvenile court to grant permanent custody of a child to PCDJFS if the court determines, by clear and convincing evidence, that: (1) it is in the best interest of the child to grant permanent custody to the agency; and (2) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. Thus, R.C. 2151.41.4(B) establishes a two-pronged analysis that the juvenile court must employ when considering a motion for permanent custody. In re Evancic (July 27, 2001), 11th Dist. No. 201-L-021, 2001 WL 849134, at *3.
 {¶ 13} Since Dakota was not abandoned or orphaned, the focus under the second prong of the test must be whether Dakota cannot be placed with either parent within a reasonable time or should not be placed with his parents. In making this determination, the juvenile court must consider the factors in R.C. 2151.41.4(E). The juvenile court must enter a finding that a child cannot be placed within a reasonable time with either of his parents if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.41.4(E)(1) through (16) exist with respect to each of the child's parents.
 {¶ 14} The juvenile court must then proceed to an analysis of the child's best interest. In determining the best interest of the child, the juvenile court must consider all relevant factors, including, but not limited to, the folllowing:
 {¶ 15} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 16} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 17} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 18} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 19} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.41.4(D).
 {¶ 20} Additionally, this court has previously held that the juvenile court must consider each of the R.C. 2151.41.4(D) factors when making a determination of the best interest of a child in a permanent custody hearing. In re Bailey (July 20, 2001), 11th Dist. No. 2001-G-2340, 2001 Ohio App. LEXIS 3293, at *13. "Failure to discuss each of these factors when determining the best interest of the child is prejudicial error. ***Thus, the record must show that the juvenile court considered all of the factors enumerated in R.C. 2151.41.4(D) when reaching its judgment, however, no one factor is dispositive." (Citations omitted.) Id. at *14-15.
 {¶ 21} In addressing a claim that the juvenile court erred in granting a motion for permanent custody, an appellate court "must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy the burden of proof." "In re Adoption of Holcomb
(1985), 18 Ohio St.3d 361, 368. A juvenile court's decision to terminate parental rights should not be overturned unless the judgment is unsupported by clear and convincing evidence. Id.
 {¶ 22} With this legal standard as a backdrop, we now turn to the instant cause and appellant's allegation that the two-pronged test set forth in R.C. 2151.41.4(B) has not been satisfied. In the trial court's judgment granting permanent custody, it specifically found, by clear and convincing evidence, that Dakota cannot be placed with either of his parents within a reasonable period of time and he should not be placed with either parent. In making this determination, the trial court was required to find that one or more of the conditions enumerated in R.C. 2151.41.4(E)(1) through (16) existed with respect to each of the parents.
 {¶ 23} As to Dakota's father, Dwight Jeter had voluntarily surrendered all of his parental rights. This meets the condition set forth in R.C. 2151.41.4(E)(10) that the parent has abandoned the child. Regarding appellant, the trial court did not specifically make reference to any particular revised code section although it appears that the court relied on R.C. 2151.41.4(E)(1) and (2). These sections provide:
 {¶ 24} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent had failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 25} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section ***,"
 {¶ 26} In its judgment, the trial court echoed much of the language from these two sections:
 {¶ 27} "*** The Court finds by clear and convincing evidence that the child's mother, Amie Slocum, suffers from a chronic mental illness that is so severe that it makes her unable to provide an adequate permanent home for her son, Dakota Slocum, at the present time or within one (1) year of the date of this Hearing. It was the testimony of Mr. Seacrist and Dr. Orlando that Ms. Slocum suffers from a chronic mental illness that will require ongoing and constant therapy for the rest of her life. Ms. Slocum's mental health issues were first brought to the attention of this Court in May of 1996 when she signed a Voluntary Temporary Custody request for her son, Dakota Slocum, because of her ongoing mental health issues.
 {¶ 28} "Dakota Slocum was Adjudicated Dependent in May of 1996 because of mental health issues of the child's mother, Amie Slocum. From May of 1996 to the present, the child, Dakota Slocum, has been removed five (5) times from his home because of his mother's mental health issues. These mental health issues continue to exist at the time of this Hearing.
 {¶ 29} "Further the Court finds by clear and convincing evidence that Dakota Slocum has been the subject matter of four (4) different cases since May of 1996 where he was found to be a Dependent child on three (3) occasions based upon his mother's mental health issues.
 {¶ 30} "It is the opinion of the experts that even with a commitment by Ms. Slocum to ongoing counseling and treatment it will be several years, if ever, before Ms. Slocum could recover from her ongoing mental illness enough to parent Dakota.
 {¶ 31} "The Court also finds by clear and convincing evidence that following the placement of Dakota Slocum outside Dakota's home and not withstanding reasonable Case Planning and the diligent efforts by the Portage County Department of Job and Family Services to assist Amie Slocum in remedying the problems that initially caused Dakota to be placed outside the home, Ms. Slocum has failed continuously and repeatedly in past cases to substantially remedy the conditions causing Dakota to be placed outside of his home. The significant goals of past Case Plans have dealt with ongoing psychological and psychiatric counseling of Amie Slocum for her mental health issues. Despite the encouragement and assistance of the Portage County Department of Job and Family Services, Ms. Slocum has been unable to utilize therapy to the extent that it makes it possible for her to parent her children."
 {¶ 32} It is clear that the trial court scrupulously considered the evidence that had been presented and made the finding that Dakota cannot be placed with one of his parents within a reasonable period of time and should not be placed with either parent. Sufficient evidence was presented that appellant suffers from chronic mental illness that makes her unable to provide an adequate permanent home for Dakota at the present time or within one year from the date of the hearing. In fact, the evidence suggested that appellant will suffer from her disability for the rest of her life, and it may be years, if ever, before she would recover to the point of being able to parent her son.
 {¶ 33} Additionally, it is clear from the testimony of Jan Jacobs, a Licensed Social Worker employed by PCDJFS, who had been assigned to Dakota's case since August 2000, that appellant has not complied with the case plan objectives. These objectives included the stabilization of appellant's mental health; the development of a good permanent living arrangement for her children; the organization of appellant's life by placing her children's needs as a priority; to be able to provide financially for herself and her family; and the pursuit of a healthy relationship with her daughter's biological father. While there were sporadic attempts to comply with the objectives of the case plan, there was no substantial compliance. In fact, appellant stopped attending individual and family therapy sessions which were the primary tools needed to meet the objectives of the case plan.
 {¶ 34} Accordingly, the trial court correctly determined that Dakota could not be placed with either parent within a reasonable period of time or should not be placed with his parents. Hence, the trial court proceeded to the second prong of the required analysis, to wit: a determination that it was in the best interest of the child to grant the agency's motion for permanent custody. The trial court concluded that it was in Dakota's best interest to award permanent custody to PCDJFS.
 {¶ 35} As previously discussed, when determining a child's best interest, the juvenile court must consider all relevant factors, including, but not limited to, the five factors set forth in R.C. 2151.41.4(D). In the case sub judice, the trial court specifically addressed each of these five factors, stating:
 {¶ 36} "1. That Dakota Slocum loves and is bonded to his mother, Amie Slocum. Amie Slocum loves and is bonded to her child, Dakota Slocum. Dakota Slocum is bonded to his foster parents and considers his foster home his home. Dakota is bonded with his sister, Abigail, who also resided in the same foster home. Dakota has not demonstrated any interaction or interrelationship with any other family members.
 {¶ 37} "2. The Court considered the wishes of Dakota as expressed by the child and through his Guardian Ad-litem. The child has indicated through Social Workers and to therapists that he wished to be adopted by his foster parents. Further, the child has indicated that he is concerned for his mother's health and well-being. The child, Dakota Slocum, has told the Guardian Ad-litem that he wished to be adopted by his foster parents.
 {¶ 38} "3. The Court considered the custodial history of Dakota Slocum. From the child's birth on August 23, 1994 to March of 1996, the child was in the custody of his mother, Amie Slocum. In March of 1996, Ms. Slocum signed a thirty-(30) day voluntary Temporary Custody Agreement for Dakota with the Department because of her mental health hospitalization. In April of 1996, Ms. Slocum signed a thirty-(30) day extension of the original voluntary custody order.
 {¶ 39} "In May of 1996, Dakota was adjudicated a Dependent child because of his mother's mental health issues. In June, the Court Ordered Dakota into the Temporary Custody of the Department of Job and Family Services. In September of 1996, Dakota was returned to his mother under an Order of Protective Supervision. In February of 1998, the Order of Protective Supervision was terminated and Dakota was returned to the full Legal Custody of his mother.
 {¶ 40} "In September of 1998, Dakota was removed from his home at a Shelter Care Hearing. In November of 1998, Dakota was again found to be Dependent because of the mental health issues of his mother. In November of 1998, Temporary Custody again was granted to the Department of Job and Family Services. In June of 1999, Dakota was returned to his mother under an Order of Protective Supervision. Full custody was returned to Ms. Slocum in August of 2000.
 {¶ 41} "In August of 2000, Dakota was removed from his mother's home. In October of 2000, Dakota was again Adjudicated Dependent, this time because of his mother's incarceration and her mental health issues. In November of 2000, Dakota was again placed in Temporary Custody of the Department of Job and Family Services. In October of 2001, Dakota was returned to his mother under an Order of Protective Supervision. In February of 2002, Dakota was returned to the Temporary Custody of the Department of Job and Family Services at his request. Dakota has been in the Temporary Custody of the Portage County Department of Job and Family Services since his last removal in February of 2002.
 {¶ 42} "4. The Court finds that Dakota Slocum is in dire need of a legally secure permanent placement and that placement cannot be achieved without the granting of Permanent Custody to the Portage County Department of Job and Family Services. Amie Slocum has not identified any family members who are willing or able to assume custody of her children. The only family member who has stepped forward in six (6) years of involvement with the Slocum children has been Ms. Slocum's sister who took care of Dakota for two (2) days and indicated to the Agency that she could not care for the child.
 {¶ 43} "5. The Court also considered the factors in 2151.04(E)(7) through (11) and determined that those factors do not apply in this case."
 {¶ 44} Upon review of the record herein, and the detailed and extensive judgment of the trial court, we must conclude that there was clear and convincing evidence supporting the trial court's determination that is was in the best interest of the child to grant permanent custody to PCDJFS.
 {¶ 45} Based on the foregoing analysis, both prongs of R.C. 2151.41.4(B) have been satisfied. Thus, the trial court's findings of fact and its decision to grant the motion for permanent custody were supported by clear and convincing evidence. As a result, we will not disturb the trial court's judgment.
 {¶ 46} For the foregoing reasons, appellant's assignments of error are not well-taken. Therefore, the judgment of the Portage County Court of Common Pleas, Juvenile Division, is affirmed.
WILLIAM M. O'NEILL and DIANE V. GRENDELL, JJ., concur.